UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United Financial Casualty Company,　　　　　　　　　Civ. No. 17-5320 (PAM/LIB)

　　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　**MEMORANDUM AND ORDER**

Bountiful Trucking LLC, Biya Buta, CHS
Inc., Jesse Sheldon, and Chad Shouveiller,

　　　　　　　Defendants.

---

　　　　This matter is before the Court on the Plaintiff's Motion for Summary Judgment. For the following reasons, Plaintiff's Motion is granted.

**BACKGROUND**

　　　　This case arises out of a May 2016 collision between a tractor-trailer and a train in Callaway, Minnesota. Defendant Biya Buta is the sole owner and operator of Defendant Bountiful Trucking, and was driving the tractor-trailer, a 2006 Kenworth, involved in the collision. At the time of the accident, he was working as an independent contractor and was hauling nearly 10,000 gallons of propane in a propane trailer owned by Defendant CHS Inc. and operated pursuant to CHS's federal motor-carrier operating authority.

　　　　The collision caused an explosion, which in turn caused significant property damage and injured a firefighter, Defendant Chad Schouveiller. The other named Defendant, Jesse Sheldon, was the train's engineer. Both Schouveiller and Sheldon brought state-court lawsuits against Bountiful and CHS; according to CHS, Sheldon's lawsuit has been resolved but it appears that Schouveiller's lawsuit is ongoing in Hennepin County. Neither

of these individual Defendants filed a response to the Motion.

Bountiful maintained liability insurance through Plaintiff United Financial Casualty Company. However, the 2006 Kenworth was not listed as an insured vehicle under the United policy. (Bradford Decl. (Docket No. 46) Ex. 1.) Moreover, according to United, its underwriting guidelines did not allow United to write policies for any vehicle hauling hazardous products such as propane. (McHugh Decl. (Docket No. 47) Ex. 1.) Bountiful's independent contractor agreement with CHS required Bountiful to maintain insurance on the 2006 Kenworth, and to indemnify CHS from any loss resulting from Bountiful's intentional or negligent conduct and from Bountiful's failure to maintain insurance as the agreement required. (Bradford Decl. Ex. 1A.) CHS maintained insurance through Old Republic Insurance Company for independent contractor vehicles and does not dispute that Bountiful's 2006 Kenworth would be included under its Old Republic policy. (Bradford Decl. Ex. 5.) United has provided a defense to Buta and Bountiful in the state-court lawsuits under a reservation of rights, and Old Republic recently agreed to do the same.

Bountiful's United policy contains a MCS-90 endorsement. This endorsement states that United covers losses "regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route . . . authorized to be served by the insured or elsewhere." (Compl. Ex. 1 (Docket No. 1-1) at 51.) CHS contends that this endorsement required United to provide coverage here. United argues that, at most, this endorsement might require United to indemnify Bountiful as an excess carrier, but it does not require United to defend Bountiful. And regardless, United argues that the MCS-90 endorsement does not apply because Bountiful was

2

operating under CHS's operating permit, not its own, and thus CHS's Old Republic insurance policy must provide defense and indemnity to Bountiful.

United seeks summary judgment that Bountiful's policy provides no coverage for the claims in the underlying state-court lawsuits. Buta and Bountiful do not oppose the Motion, but ask that the Court not enter judgment in United's favor until they have secured a ruling that CHS's insurance must defend and indemnify them. CHS is thus the only Defendant substantively opposed to the Motion.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Although there is a potential choice-of-law issue in this case, the parties agree that Minnesota and North Dakota law do not differ on interpretation of insurance policies. The Court will therefore not undertake a choice-of-law analysis at this stage. In addition, the question of the application of federal motor carrier law is one of federal law. See Harris v.

3

FedEx Nat'l LTL, Inc., 760 F.3d 780, 785-86 (8th Cir. 2014) (interpreting FMCSA requirements as a matter of federal law).

**A. FMCSA Requirements**

The issue in this case is whether the federally required MCS-90 endorsement obligates United to insure Bountiful here. United contends that the endorsement does not apply because Bountiful was operating under CHS's motor-carrier authority at the time of the accident, not its own.

To engage in interstate transportation, "a motor carrier must maintain insurance or other financial security with the minimum limits of coverage prescribed by the [federal Department of Transportation]." Great W. Cas. Co. v. Gen. Cas. Co. of Wisconsin, 734 F. Supp. 2d 718, 733 (D. Minn. 2010) (Davis, C.J.). The purpose of the endorsement and underlying regulations "is to ensure that the public is adequately protected from the risks created by a motor carrier's operations and to ensure the collectibility [sic] of a judgment against the motor carrier." Id. at 734.

The minimum level of insurance or financial responsibility required for the transportation of hazardous materials such as the propane involved here is $5 million. 49 C.F.R. § 387.9(2). The endorsement at issue, MCS-90, is one way for motor carriers to demonstrate proof of financial responsibility under the Federal Motor Carrier Safety regulations. Id. § 387.7(d). A motor carrier is required to provide the Federal Motor Carrier Safety Administration with proof of financial responsibility. Id. § 387.301(a)(1). In this case, Bountiful did so through United, which filed an online Form BMC-91X with the FMCSA certifying that United was providing the minimum level of insurance to

4

Bountiful. (Docket No. 1-1 at 53.) Even if Bountiful's United policy did not contain the MCS-90 endorsement, however, it would be read to do so under the FMCS regulations. Great W. Cas., 734 F. Supp. 2d at 734.

But a MCS-90 endorsement should not be construed to provide primary insurance coverage to motor carriers. Rather, its purpose is to "protect members of the public injured by interstate motor carriers from uncompensated losses—by mandating coverage where there would otherwise be no coverage. Where there is other adequate coverage, this purpose is not implicated and the MCS-90 endorsement should not operate to amend a policy." Am. Alternative Ins. Co. v. Sentry Select Ins. Co., 176 F. Supp. 2d 550, 557 (E.D. Va. 2001) (emphasis omitted). Thus, "[a]n insurer's obligation under MCS-90 and the federal regulatory scheme is that of a surety, providing a safety net to protect the public in the event other insurance coverage is lacking, and not as true insurance coverage." Great W. Cas., 734 F. Supp. 2d at 735.

**B.     Defense vs. Indemnity**

United first contends that while the MCS-90 endorsement might require it to indemnify Bountiful for the accident, it is not required to defend Bountiful. This is so because it is undisputed that Bountiful's United policy, as written, does not cover the truck involved in the accident, nor does it cover any vehicle hauling hazardous waste.

But Bountiful's policy contained a MCS-90 endorsement, which extended the policy's coverage to any vehicle Bountiful used, whether the vehicle was specifically listed in the policy or not. Id. (quoting 49 C.F.R. § 387.15, at Illustration I). Thus, assuming the MCS-90 endorsement applies in the first instance, United's argument on this point fails.

5

## C. Application of MCS-90 Endorsement

United makes two arguments against the application of the MCS-90 endorsement in this case. First, United contends that the MCS-90 endorsement does not apply because Bountiful was operating under CHS's motor-carrier authority, not its own. The form BMC-91X that United submitted specifies that it "governs the operation, maintenance or use of motor vehicles under certificate or permit issued to the Insured" and that liability "extends to all losses, damages, injuries, or death occurring within the authority granted to the insured by the [FMCSA]." (McHugh Decl. Ex. 2 at 2 (exemplar BMC-91X) (Docket No. 50).) United's second argument is that, even if the MCS-90 did apply, United's responsibility is only in excess of whatever insurance CHS maintained, which is undisputedly sufficient to meet the federal minimum requirements.

CHS counters that the MCS-90 endorsement specifically provides that it applies "regardless of whether or not [Bountiful's] negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere." (Bjorkman Aff. (Docket No. 56) Ex. 1.) And CHS points to its Old Republic policy's deductible, which is equal to the $5 million policy limit, to argue that there is no "other insurance" available to Bountiful for purposes of the MCS-90 endorsement. See Carolina Cas. Ins. Co. v. Yeates, 584 F.3d 868, (10th Cir. 2009) (en banc) (finding that "insurer's obligation under the MCS-90 endorsement is not triggered unless (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) the carrier's other insurance coverage is either insufficient to meet the federally-mandated minimums or non-existent"). Perhaps recognizing that no court has held that self-insurance

6

is not "other insurance" in the MCS-90 context, CHS contends that equitable principles should prevent the Court from finding that there is "other insurance" for Bountiful here, in light of Bountiful's promise in its contract with CHS to indemnify CHS against claims like those raised in the underlying litigation.

United's interpretation of these contract terms is correct. The policy behind MCS-90 endorsements is to protect the public and ensure that there are funds available for recovery in the event of injury caused by a motor carrier. There is "other coverage" available here, even if CHS is correct that it self-insures up to $5 million.[1] Finally, the existence of the indemnification provision in the CHS independent contractor agreement cannot override the terms of United's policy, because United was not a party to that agreement. CHS's equitable argument is without merit. At most, United is only obligated to provide excess coverage to the extent that CHS's insurance is insufficient.

**CONCLUSION**

The terms of the relevant insurance policies establish that United is not obligated to provide first-level coverage for claims arising out of the accident at issue. Accordingly, **IT IS HEREBY ORDERED that** Plaintiff's Motion for Summary Judgment (Docket No. 43) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 13, 2018					*s/ Paul A. Magnuson*
					Paul A. Magnuson
					United States District Court Judge

---

[1] United argues that the deductible page in the Old Republic policy seems to indicate that the $5 million deductible applies only to personal injury, property protection, and physical damage, not to "covered autos liability." (See United's Reply Mem. at 7-8.)